**BROYHILL FURNITURE INDUSTRIES, INC., Plaintiff–Appellant,**

v.

**CRAFTMASTER FURNITURE CORPORATION, Defendant– Appellee.**

No. 91–1014.

United States Court of Appeals, Federal Circuit.

Dec. 20, 1993.

Jack W. Floyd, Floyd, Allen & Jacobs, Greensboro, NC, argued, for defendant-appellee. With him on the brief, were Louis C. Allen, III and James H. Slaughter. Also on the brief, was Edward W. Rilee, Rhodes, Coats & Bennett, of Greensboro, NC, of counsel, were Jack B. Hicks and C. Robert Rhodes.

Before RICH, PLAGER, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Broyhill Furniture Industries appeals from the order of the United States District Court for the Western District of North Carolina granting Craftmaster Furniture Corporation's motions for relief from a consent judgment and for leave to file various counterclaims. *Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.,* Civ. No. ST–C–85–0034–M (W.D.N.C. Sept. 11, 1990). Because the court abused its discretion in granting Craftmaster's motion for relief from the consent judgment, we vacate that part of the order and remand. Because Broyhill's appeal from the court's order granting Craftmaster's motion for leave to file its counterclaims is interlocutory and not otherwise appealable, we dismiss that portion of the appeal.

## BACKGROUND

Broyhill is the owner of U.S. Design Patent 274,485 which relates to an ornamental design for upholstered furniture. Two lawsuits are pertinent to the present appeal. The first was commenced on July 17, 1984, when three furniture manufacturers and sellers, collectively referred to as "Benchcraft," brought a declaratory judgment action against Broyhill in the United States District Court for the Northern District of Mississippi, seeking a declaration that the '485 patent was, *inter alia,* unenforceable. Benchcraft asserted that Broyhill had engaged in inequitable conduct in procuring its patent by intentionally withholding material prior art photographs from the Patent and Trademark Office (PTO) during patent prosecution.

Floyd A. Gibson, Bell, Seltzer, Park & Gibson, Charlotte, NC, argued, for plaintiff-appellant. With him on the brief, were Blas P. Arroyo and William M. Atkinson.

Broyhill counterclaimed, asserting willful infringement.

The lawsuit from which this action arises was instituted by Broyhill against Craftmaster for infringement of the '485 patent on February 19, 1985, while the Mississippi lawsuit was pending. Soon thereafter, Broyhill and Craftmaster entered into a settlement agreement pursuant to which the District Court for the Western District of North Carolina entered a consent order and judgment on June 5, 1985, enjoining Craftmaster from infringing the patent.

In June of 1986, while the Mississippi lawsuit was still pending, Broyhill petitioned the North Carolina district court to hold Craftmaster in contempt of the consent judgment on the ground that Craftmaster was selling infringing furniture in violation of the judgment. Following an evidentiary hearing, the court held Craftmaster in contempt. Approximately one year later, in June of 1987, Broyhill filed a second petition seeking to hold Craftmaster in contempt.

On March 14, 1988, while the second contempt petition was pending, the Mississippi district court in *Benchcraft* found that Broyhill, through the actions of certain of its employees, including its president and patent attorney, had engaged in inequitable conduct before the PTO by withholding material prior art photographs. The court thus held that the '485 patent was unenforceable. *Benchcraft, Inc. v. Broyhill Furniture Indus., Inc.,* 681 F.Supp. 1190, 7 USPQ2d 1257 (N.D.Miss. 1988). Thereafter, Broyhill filed a motion to stay the contempt proceedings pending appeal. On appeal, the Mississippi court's judgment in *Benchcraft* was vacated and remanded by this court for further proceedings. *Benchcraft, Inc. v. Broyhill Furniture Indus., Inc.,* 871 F.2d 1096, 10 USPQ2d 2036 (Fed.Cir.1989) (nonprecedential). On remand, the Mississippi court again found that Broyhill had engaged in inequitable conduct before the PTO and that the patent was unenforceable. *Benchcraft, Inc. v. Broyhill Furniture Indus., Inc.,* Civ. No. WC 84–143–D–D, 1989 WL 436445 (N.D.Miss. Nov. 7, 1989).

Broyhill did not appeal the Mississippi decision on remand and immediately moved to dismiss with prejudice its contempt petition against Craftmaster. Craftmaster then filed a motion in the North Carolina court pursuant to Federal Rule of Civil Procedure 60(b) to vacate and set aside the consent judgment, asserting that "[t]he circumstances surrounding entry of [the consent] judgment amount[ed] to fraud both on the defendant and on th[e c]ourt." Craftmaster also filed a motion for leave to file counterclaims for fraud, unfair competition, and unfair trade practices, seeking, *inter alia,* damages in the amount of previously paid royalties. The district court granted both of Craftmaster's motions, and Broyhill now appeals from that order.

## DISCUSSION

### A. Rule 60(b) Relief

■ The first issue before us is whether the court properly granted Craftmaster's motion to set aside the consent judgment pursuant to Rule 60(b). Generally, in reviewing rulings under Rule 60(b), we defer to the law of the regional circuit in which the district court sits because such rulings commonly involve procedural matters that are not unique to patent law. *See, e.g., Fraige v. American–National Watermattress Corp.,* 996 F.2d 295, 27 USPQ2d 1149 (Fed.Cir. 1993) (under Ninth Circuit law, testimony based on fraudulent documentation was sufficient to justify setting aside a jury verdict under Rule 60(b) and ordering a new trial on the issue of patent validity); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.,* 977 F.2d 558, 561 n. 3, 24 USPQ2d 1451, 1453 n. 3 (Fed.Cir. 1992) (under Third Circuit law, the district court did not abuse its discretion in declining to modify a consent order under Rule 60(b)(5) following a change of law); *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 3 USPQ2d 1412 (Fed.Cir.1987) (failure to disclose publicly available prior art references to district court did not justify Rule 60(b) relief under Tenth Circuit standard); *Ashland Oil, Inc. v. Delta Oil Prods. Corp.,* 806 F.2d 1031, 1 USPQ2d 1073 (Fed.Cir.1986) (change in law of obviousness after entry of judgment of invalidity does not justify Rule 60(b) relief under Seventh Circuit standard).

However, in the instant case we will not accord such deference because our review of the district court's Rule 60(b) ruling turns on substantive matters that are unique to patent law. *See Hybritech, Inc. v. Abbott Lab.,* 849 F.2d 1446, 1451 n. 12, 7 USPQ2d 1191, 1995 n. 12 (Fed.Cir.1988) (Federal Circuit law provides the standards governing the issuance of a preliminary injunction pursuant to 35 U.S.C. § 283 because this issue, although a procedural matter, involves substantive matters unique to patent law). The issues before us are whether a consent judgment enjoining infringement of a patent should be set aside pursuant to certain subsections of Rule 60(b) following a judicial determination that the patent was procured through inequitable conduct in the PTO. Because we perceive a clear need for uniformity and certainty in the way the district courts treat this issue, we resolve it as a matter of Federal Circuit law. *See Foster v. Hallco Mfg. Co. Inc.,* 947 F.2d 469, 475, 20 USPQ2d 1241, 1245 (Fed.Cir.1991) (in order to promote uniformity in patent law, the Federal Circuit must resolve for itself the effect of Supreme Court precedent on consent judgments holding a patent valid and infringed).[1]

We review the district court's ruling under Rule 60(b) to determine whether the court abused its discretion. *Browder v. Director, Ill. Dept. of Corrections,* 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978). An abuse of discretion exists when, *inter alia,* the lower court's decision was based on an erroneous conclusion of law or on a clearly erroneous finding of fact. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1039, 22 USPQ2d 1321, 1333 (Fed.Cir.1992) (in banc) (citations omitted); *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986) (relying expressly on Fourth Circuit law for guidance).

Rule 60(b) provides in pertinent part: ·

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ... (3) *fraud* (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) *the judgment is void;* (5) ... it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. *The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken....* This rule does not limit the power of a court *to entertain an independent action to relieve a party from a judgment,* ... *or* to set aside a judgment for fraud upon the court.

Fed.R.Civ.Pro. 60(b) (emphasis added).

It is undisputed that Craftmaster did not file its motion within one year after entry of the consent judgment and was thus unable to come within the specific fraud provision of subsection (3). The court nevertheless concluded that there were two alternative grounds on which to premise relief. First, the court concluded that the consent judgment was "void" under subsection (4), and second, the court concluded that Broyhill had committed a "fraud upon the court" within the meaning of the provision in the rule stating that "this rule does not limit the power of a court ... to set aside a judgment for fraud upon the court" (hereinafter referred to as the "savings clause"). Broyhill argues that these conclusions were erroneous and that, since neither ground was sufficient to support its order, the court abused its discretion in setting aside the consent judgment under Rule 60(b).

The basis for the court's conclusion that the consent judgment was "void" was simply that "[i]f Broyhill does not possess a valid patent, Craftmaster cannot infringe

---

1. While we will not defer to regional circuit law, we find persuasive the views of other circuits, including the Fourth Circuit, which have considered the meaning of the provisions of Rule 60(b) that are before us. *See Information Systems and Networks Corp. v. United States,* 994 F.2d 792, 795 (Fed.Cir.1993) ("While we have no considered binding case law precedent concerning ... interpretation of ... [Claims Court] Rule 60(b)(1), we are not unmindful of the actions of our sister circuits that have thoroughly considered this issue.") (footnote omitted).

Broyhill's patent," and the consent order which enjoins Craftmaster from infringement is "null and void." Op. at 1082. Broyhill claims that this application of Rule 60(b)(4) was erroneous. We agree.

■ "In the sound interest of finality, the concept of void judgment must be narrowly restricted. And it is." James W. Moore & Jo Desha Lucas, Moore's Federal Practice ¶ 60.25[2] at 60–225 (2d ed. 1993). "A judgment is not void merely because it is or may be erroneous, or because the precedent upon which it was based is later altered or even overruled." *United States v. Boch Oldsmobile, Inc.,* 909 F.2d 657, 661 (1st Cir.1990) (citations omitted); *see also Combs v. Nick Garin Trucking,* 825 F.2d 437, 442 (D.C Cir. 1987). Rather, it is well established that a judgment is void for purposes of 60(b)(4) only when the court that rendered the judgment lacked jurisdiction or failed to act in accordance with due process of law. *Boch,* 909 F.2d at 661; *Marshall v. Board of Education, Bergenfield, N.J.,* 575 F.2d 417, 422 (3rd Cir.1978); *Schwartz v. United States,* 976 F.2d 213, 217 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1280, 122 L.Ed.2d 673 (1993); *Wesco Products Co. v. Alloy Automotive Co.,* 880 F.2d 981, 984 (7th Cir.1989); *Combs,* 825 F.2d at 442 (because personal jurisdiction requires effective service of process, a judgment is void when the requirements for effective service have not been satisfied). *See also* Jack H. Friedenthal et al., Civil Procedure 575 (1985) ("[R]ule 60(b)(4) grounds for relief are limited strictly, [and a] judgment can be challenged as void only on grounds of lack of jurisdiction or for some failure of due process in the original proceeding.").

The fact that the '485 patent was held to be unenforceable after entry of the consent judgment did not render that judgment "void" for purposes of Rule 60(b)(4). The parties do not allege, and the district court did not find, that the court lacked jurisdiction or violated the requirements of due process of law. We thus conclude that the court erred as a matter of law in concluding that the consent judgment was void under Rule 60(b)(4). Accordingly, the court abused its discretion in granting relief on that basis.

■ The court also concluded that Broyhill committed a fraud upon the court within the meaning of the savings clause of Rule 60(b). The court reasoned as follows:

Broyhill presented to this court for its signature a consent judgment and order providing for the enforcement of what it had reason to know was an unenforceable patent. Apparently not content, Broyhill twice (once successfully) asked this court to hold Craftmaster in contempt of the consent judgment and order. It is the opinion of this court that Broyhill's conduct throughout these proceedings, in deceiving the court in much the same way as it had deceived the PTO, is tantamount to 'fraud upon the court.'

Op. at 1082 (emphasis omitted).

Broyhill argues that this conclusion was erroneous because it is not supported by the record and is inconsistent with the manner in which Broyhill conducted itself before the court. Broyhill emphasizes that all of its actions in enforcing the '485 patent occurred prior to the Mississippi court's decision in *Benchcraft* and that, following that decision, it immediately discontinued its enforcement efforts and moved to dismiss its contempt proceedings against Craftmaster with prejudice. Broyhill tells us that after it filed its complaint against Craftmaster, Craftmaster did not answer, took no discovery, and immediately instituted settlement negotiations. Broyhill states that Craftmaster was familiar with the Mississippi lawsuit at that time, as evidenced by Craftmaster's motion to stay the proceedings pending the outcome of the Mississippi lawsuit in *Benchcraft.* Broyhill points out that both Craftmaster and the district court knew of the pertinent photographs during the contempt proceedings because Craftmaster filed those photographs with the court in its opposition to Broyhill's petition. In sum, Broyhill argues that the record does not support the court's conclusion that it committed a fraud upon the court and that the court thus abused its discretion in setting aside the consent judgment on that basis.

Craftmaster urges us to view the facts differently. Specifically, Craftmaster argues

that the court's conclusion that Broyhill committed a fraud upon the court was correct and supported by the record. Craftmaster asserts that after Broyhill procured its patent, it continued to perpetrate a fraud upon the court by "submitting pleadings and sworn statements seeking relief based upon the ill-gotten patent." Craftmaster emphasizes the fact that Broyhill's patent attorney withheld prior art from the PTO and thereafter took action to enforce the fraudulently procured patent by filing a patent infringement complaint, engaging in settlement negotiations, entering into a consent decree, and instituting contempt proceedings. Craftmaster further states that Broyhill's president was similarly involved in the procurement and enforcement of the '485 patent. It is thus Craftmaster's position that although there was no judicial determination that the '485 patent was unenforceable until after Broyhill took each of the above-cited enforcement actions, Broyhill knew from the outset that it had procured its patent by "fraud" and thereby perpetrated a fraud upon the court by asserting that patent in court.[2]

We emphasize as an initial matter that we fully accept, and Broyhill in no way disputes, the Mississippi court's finding in *Benchcraft* that Broyhill intentionally withheld material prior art from the PTO and that Broyhill thus procured its patent by means of inequitable conduct. Nevertheless, we agree with Broyhill that the court erred in concluding that Broyhill committed a fraud upon the court within the meaning of the savings clause of Rule 60(b).

Rule 60(b) contains two references to fraud. The first is in subsection (3) which specifically provides that a court may set aside a judgment for "fraud" and the second is in the savings clause which provides that Rule 60(b) does not limit the power of a court to set aside a judgment for "fraud upon the court." The rule further provides that a motion to set aside a judgment for fraud under subsection (3) must be made within one year following entry of the judgment. The savings clause, in contrast, contains no time limitation.

In view of the two distinct fraud provisions of Rule 60(b), "[n]ot all fraud is 'fraud on the court.'" *Great Coastal Express, Inc. v. International Bhd. of Teamsters,* 675 F.2d 1349, 1356 (4th Cir.1982), *cert. denied,* 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (1983). Indeed, the savings clause of Rule 60(b) "should be construed very narrowly" because "the otherwise nebulous concept of 'fraud on the court' could easily overwhelm the specific [fraud] provision of 60(b)(3) and its [one-year] time limitation." *Id. See also* Moore's ¶ 60.33 at 60–356 ("If 'fraud upon the court' is not kept within proper limits but is ballooned to include all or substantially all species of fraud within 60(b)(3) then the time limitation upon 60(b)(3) will be meaningless."); *Kerwit Medical Prods., Inc. v. N. & H. Instruments, Inc.,* 616 F.2d 833, 836–37, 207 USPQ 625, 627 (5th Cir.1980) ("Only a small number of those acts that can be considered fraud amount to 'fraud upon the court,' as that phrase is used in Rule 60(b)."); *Kupferman v. Consolidated Research and Mfg. Corp.,* 459 F.2d 1072, 1078 (2nd Cir. 1972) ("[fraud upon the court] cannot be read to embrace any conduct of an adverse party of which the court disapproves; to do so would render meaningless the one-year limitation on motions under Rule 60(b)(3)").

It is well-settled that "'fraud upon the court' should [ ] embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct." Moore's ¶ 60.33 at 60–360 (citations omitted). Fraud upon the court is thus "typically confined to the most egre-

2. Conduct before the PTO that may render a patent unenforceable is best referred to as "inequitable conduct," not fraud. *J.P. Stevens & Co. v. Lex Tex Ltd.,* 747 F.2d 1553, 1559, 223 USPQ 1089, 1092 (Fed.Cir.1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). *See also Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 9 USPQ2d 1384 (Fed. Cir.1988) (in banc), *cert. denied,* 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). Accordingly, we treat Craftmaster's argument as relating to inequitable conduct in the PTO, not fraud in the PTO.

gious cases, such as bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Great Coastal,* 675 F.2d at 1356 (citations omitted). *See also Gleason v. Jandrucko,* 860 F.2d 556, 559 (2nd Cir.1988) (" 'fraud upon the court' is limited to fraud which seriously affects the integrity of the normal process of adjudication"); *Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.,* 827 F.2d 984, 986 (4th Cir.1987); *Alexander v. Robertson,* 882 F.2d 421, 424 (9th Cir.1989); *Amstar,* 823 F.2d at 1550, 3 USPQ2d at 1421 (Fraud on the court "is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury, ... [but] where the impartial functions of the court have been directly corrupted.") (quoting *Bulloch v. United States,* 721 F.2d 713, 718 (10th Cir.1983)).

Here, the district court correctly concluded that Craftmaster could not obtain relief under subsection (3) of Rule 60(b) because it filed its motion more than four years after entry of the consent judgment, a period far exceeding the one-year time limitation. The court nevertheless found that Broyhill's conduct, seeking the entry and enforcement of a consent decree that Broyhill "had reason to know" was based on a fraudulently procured patent, was fraud upon the court within the meaning of the savings clause.

While it is a given that improper activity was involved in this case, and we express no view as to whether relief would have been encompassed by Rule 60(b)(3) had Craftmaster filed its motion within the one-year time limit, we conclude in view of the above-stated principles that Broyhill's conduct is not "fraud on the court" within the meaning of the savings clause of Rule 60(b). The fact that Broyhill knowingly withheld material prior art from the PTO and thereafter sought enforcement of the patent it obtained does not alone constitute one of "the more egregious forms of subversion of the legal process ... that we cannot necessarily expect to be exposed by the normal adversary process." *See Great Coastal,* 675 F.2d at 1357.

This case is different from the Supreme Court case of *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), which the 1946 Notes of the Advisory Committee cite as an illustration of fraud upon the court for purposes of Rule 60(b). In *Hazel–Atlas,* a patent attorney for Hartford–Empire falsely authored an article for the purpose of gaining allowance of a patent application. Hartford later brought suit against Hazel–Atlas for patent infringement and included the fraudulent article in the record before the district court. The district court found no infringement. On appeal to the Third Circuit, Hartford relied on the fraudulent article, and the court of appeals reversed, relying on and directly quoting from the article. Hazel–Atlas later discovered the fraud and brought an independent action in the Third Circuit for relief from the prior judgment. The court denied relief because the article was not a primary basis of its earlier decision. The Supreme Court reversed, finding that Hartford had engaged in "a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals," *Id.,* 322 U.S. at 245–46, 64 S.Ct. at 1001–02, in which "the trail of fraud continued without break [from the PTO] through the District Court and up to the Circuit Court of Appeals." *Id.,* 322 U.S. at 250, 64 S.Ct. at 1003. The Court concluded that the judgment should have been set aside.

The critical facts in *Hazel–Atlas,* which are not present here, are that the attorney submitted fraudulent evidence and did so, not only to the PTO, but to the court itself. The attorney included the article in the record before the district court, and after the district court declined to find infringement, the attorney submitted the fraudulent article to the court of appeals and extensively quoted from it in urging reversal. *Cf. Fraige,* 996 F.2d 295, 27 USPQ2d 1149 (the submission of forged documentation and an altered advertisement at preliminary injunction hearing was a *Hazel–Atlas* type of fraud).

In contrast to the situation in *Hazel–Atlas,* Broyhill did not submit fraudulent evidence to the district court and thus did not extend a "trail of fraud" from the PTO into the district

court. *See Hazel–Atlas,* 322 U.S. at 250, 64 S.Ct. at 1003. Furthermore, at least in the present context, while we condemn inequitable conduct in the PTO, it is much more convincing to find fraud on the court in falsely fabricating an article presented in court than it is to draw a similar conclusion from a failure to disclose material prior art to the PTO. The legal system contains a different, effective sanction for such conduct; in the case of an inequitably procured patent, the patent is rendered unenforceable. *Cf. Great Coastal,* 675 F.2d at 1357 (in holding that perjured testimony is not a "fraud upon the court" for purposes of Rule 60(b), the court specifically noted that the legal system contains other sanctions against perjury); *Alexander,* 882 F.2d at 425 (the unauthorized practice of law is not "fraud on the court" under the savings clause because, among other reasons, there are other remedies available to protect the judicial system from this type of misconduct).

We thus conclude that the court erred in concluding that Broyhill committed a fraud upon the court within the meaning of the savings clause of Rule 60(b). Because the consent judgment is not void and Broyhill did not commit a fraud upon the court within the meaning of the savings clause, the court abused its discretion in setting aside the consent judgment under Rule 60(b). We vacate the court's order setting aside the consent judgment and remand for a determination whether any relief is appropriate under some other provision of Rule 60(b).

### B. *Leave to File Counterclaims*

■ Broyhill also appeals from the court's order granting Craftmaster's motion for leave to file counterclaims. Broyhill asserts that Craftmaster's counterclaims are not related to the patent infringement suit which the consent decree settled, but to separate bankruptcy proceedings currently pending elsewhere. The bankruptcy court referred the question whether Craftmaster could properly assert its counterclaims to the district court responsible for the consent decree. The district court determined that the counterclaims were proper, and Broyhill urges us to reverse that determination.

We must first consider our jurisdiction to hear this aspect of the appeal. Broyhill does not dispute that the court's order permitting Craftmaster to go forward with its counterclaims is interlocutory and otherwise nonappealable. *See* 28 U.S.C. §§ 1292, 1295 (1993). Broyhill urges, however, that we should exercise our discretion to review the order pursuant to *Intermedics Infusaid, Inc. v. University of Minn.,* 804 F.2d 129, 231 USPQ 653 (Fed.Cir.1986), in which we held that in cases involving two orders, one appealable and one not, we may, subject to our discretion, exercise our "pendent jurisdiction at the appellate level," and review the otherwise nonappealable order. *Id.,* 804 F.2d at 134, 231 USPQ at 657. The controlling fact in our determining whether to undertake such review is the extent to which the appealable and nonappealable orders are factually interrelated. *Id.* Here, the two orders before us, one under Rule 60(b) and the other relating to the permissibility of Craftmaster's counterclaims, do not bear such an interrelationship, and Broyhill fails to offer specific arguments that they are so related. We conclude that they are not sufficiently related to persuade us to hear the appeal on the counterclaims and we thus decline to exercise our discretion to review the merits of that portion of the court's order granting Craftmaster's motion for leave to file counterclaims. Accordingly, Broyhill's appeal on that issue is dismissed.

### CONCLUSION

Because the consent judgment was not void and Broyhill did not commit a fraud upon the court within the meaning of the savings clause of Rule 60(b), the court abused its discretion in granting Craftmaster's motion to set aside the consent judgment. Accordingly, we vacate that part of the court's order and remand for a determination whether relief is appropriate under other provisions of Rule 60(b). The portion of Broyhill's appeal of the court's order permitting Craftmaster to go forward with counterclaims is dismissed.

### COSTS

No costs.

*VACATED AND REMANDED–IN–PART AND DISMISSED–IN–PART.*